**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>John Freeman Busche and<br>Alycia Daniel Busche,<br><br>Debtors. | Case No. 15-02559-dd<br><br>Chapter 7 |

**ORDER REQUIRING DISGORGEMENT OF FEES**

THIS MATTER comes before the Court a motion filed by the United States Trustee ("UST") for Review of Attorney's Fees and Disgorgement ("Motion") of fees received by counsel D. Nathan Davis from John and Alycia Busche ("Debtors"). Based upon the filings in this case, applicable statutory and case law, evidence presented, and arguments of counsel, the Court orders Davis to disgorge $620 to the Debtors within 10 days of the filing of this order, and provide proof of said payment to the UST within 15 days of the filing of this order.

**I.    FINDINGS OF FACT**

1.    Debtors filed for relief under chapter 7 of the bankruptcy code on May 11, 2015.

2.    Michelle L. Vieira was appointed chapter 7 trustee ("Trustee").

3.    Davis is Debtors' counsel of record. Pursuant to Fed. R. Bankr. P. 2016(b), he disclosed in the petition that he agreed to accept $2,500 for legal services, and that prior to the filing he had received $1,120.

1

4.      Debtors filed their schedules and statements of financial affairs ("SOFA") with the petition.

5.      The SOFA indicates that prior to the filing Davis was paid $1,145.

6.      The petition indicates that Debtors' debts are primarily consumer debts.

7.      Debtors scheduled nearly $3 million in unsecured debt, $1.9 million of which is owed to Tier One Bank. The schedules show Mr. Busche as the sole income earner with a monthly net income of $3,455.56. Original schedule J reflects monthly expenses of $5,685.34 for a household of four. Accordingly, schedule J reflects a negative monthly disposable income of $2,229.78.

8.      The means test filed with the petition reflects a current monthly income of $6,113.00, which exceeds the median family income for a household size of four. Pursuant to 11 U.S.C. § 707(b)(2)[1], the presumption of abuse therefore arose and Debtors were required to complete Form 22A-2. However, the box indicating "No Presumption Arises" was checked in the petition and Form 22A-2 was not completed.

9.      Upon request, on June 9, 2015, Davis forwarded to the UST copies of Debtors' bank statements and tax returns for 2013 and 2014. Debtors claimed five dependents on their tax returns, for a total household size of seven. The bank statements reflected deposits made in Debtors' bank account that were substantially higher than the gross or net income reported in Debtors' schedules or means test.

10.     On June 18, 2015, Davis filed an amended schedule J reflecting a household of seven. He also amended the means test form to indicate income consistent with the

---

[1] Further references to the bankruptcy code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

UST's calculations and to raise the number of dependents to seven. This resulted in Debtors' being below the median family income and removed the presumption of abuse.

11. The first meeting of creditors was scheduled for June 18, 2015 at 1:30 p.m. The Debtors were both present; however, Davis did not appear, and the meeting was continued until July 16, 2015. Neither the Trustee nor the UST were informed that Davis would be delayed and/or absent.

12. At the hearing on this Motion, Davis explained to the Court that he knew he had a scheduling conflict with a state court trial, but believed the trial was going to be continued. He found out the morning of the June 18 that the hearing would go forward, and was surprised at how long the hearing took. He further explained that the meetings of creditors frequently run late so he did not think his delay would result in him missing the meeting.

13. Davis also told the Court, and the Debtors testified at a later meeting of creditors, that Debtors were informed of the conflict the morning of the meeting. Davis stated he also told Debtors that he had another attorney willing to stand in for him at the meeting. Debtors waited several hours for Davis.

14. The continued meeting of creditors was held on July 16, 2015. At that meeting, Debtors testified that (1) Mr. Busche was earning extra income through his side business; (2) the Tier One Bank debt was business debt, as was the majority of the other unsecured debt; (3) Debtors had an additional expense of $2,000 for school tuition; and (4) Debtors had disclosed to their attorney the correct number of dependents and did not know why the number on the petition was incorrect.

3

15. In light of the Debtors' testimony, the Trustee requested that Davis make substantial amendments to the Debtors' schedules by July 27, 2015. Davis agreed. Accordingly, the meeting of creditors was continued again to give Debtors time to file the amendments.

16. On July 22, 2015, via email, the UST requested that Davis turn over all documents related to the filing of the Debtors' bankruptcy petition. Davis responded that he was out of town and would not return until the deadline to file the Trustee's amendments. He further indicated that he would schedule an appointment to meet with the Debtors after his return to determine if they were willing to comply with the UST's request. Debtors eventually consented to this request, over Davis's objection that the information was privileged.

17. On August 5, 2015, Davis consented to the UST's request to extend the deadline for objecting to Debtors' discharge, and told the UST he was meeting with Debtors the following day to discuss the amendments to the schedules.

18. On August 11, 2015, two days prior to the continued meeting of creditors and 15 days after the amendments were due, Davis filed the third set of amendments. These amendments further demonstrated that the presumption of abuse did not arise in the case.

19. On August 13, 2015, the Trustee questioned the Debtors at the continued meeting of creditors. Debtors testified that they met with Davis for the first time in the summer of 2014, at which time they filled out a questionnaire and provided Davis with copies of their most recent bank statements. Mr. Busche testified that he told Davis the majority of the debts were related to his construction business, and that Davis knew of his

4

side business as an electrician. Finally, Debtors testified that they had timely provided the information to amend their schedules to Davis.

20. On August 31, 2015, the UST filed this Motion. Davis timely objected.[2]

21. Debtors received a discharge on September 25, 2015.

22. The Court held a hearing on the Motion on October 20, 2015.

23. At the hearing, the UST explained in detail how much time and effort her office put into investigating the Debtors for potential abuse, and how Davis's inaction and inattention unnecessarily prolonged those efforts.

24. Davis responded by admitting he made mistakes in the case, and stated that he has learned a great deal from the UST's investigative process. He has made changes to his office procedures based on what he learned.

25. Specifically, Davis stated that he was unsure whether the debts were business or consumer debts, and thought erring on the side of classifying them as consumer debts was the better, more cautious approach. He stated that Mr. Busche had told him his electrician's license was suspended prior to the filing of the petition, so he did not think Mr. Busche's side business was operating.

26. Davis also clarified that to date he has received $1,145 from the Debtors for his services, and acknowledged that the remaining balance had been discharged through the Debtors' bankruptcy. Out of the $1,145, $25 was used to perform an asset check on the Debtors. Davis currently holds $1,120 in his escrow account for this case.

---

[2] The objection to the Motion was originally due October 6, 2015, but was extended by consent.

## II.    CONCLUSIONS OF LAW

The UST requests that Davis disgorge his fees as unreasonable under the circumstances pursuant to § 329, and for violations of his duty to investigate Debtors' financial affairs. *See* 11 U.S.C. § 707(b)(4). Based on the facts and circumstances of this case, the Court orders disgorgement of the fees to the Debtors pursuant to § 329.

Section 329(b) authorizes courts to review all compensation received by debtor's counsel. *In re Stamper*, No. 02-09812-jw, 2005 Bankr. LEXIS 2722, at*17 (Bankr. D.S.C. Dec. 19, 2005).  Section 329 provides:

> (a) Any attorney representing a debtor in a case under this title … shall file with the court a statement of the compensation paid or agreed to be paid …
>
> (b) If such compensation [of bankruptcy counsel] exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to … the entity that made such payment.

11 U.S.C. § 329.

It is the attorney's burden to show the reasonableness of his fees. *In re Kestner*, No. 12-32831-RAG, 2015 WL 1855357, at *10 (Bankr. D. Md. Apr. 20, 2015) ("Once a question has been raised about the reasonableness of an attorney's fees under section 329, the attorney bears the burden of establishing that the fee is reasonable."). The reasonableness inquiry requires a court to consider a variety of factors, including the quality of the services rendered and the time spent. *Id*.; *In re Brown*, Case No. 04-11187-dd, at 6 - 10 (Bankr. D.S.C. January 23, 2008) (listing twelve factors). "'[W]here the petition and schedules filed on behalf of the debtor contain discrepancies, omissions, and inaccuracies, fee disgorgement is appropriate under § 329.'" *Ohpark*, 2010 WL 1930187,

at *2 (citation omitted); *In re Nickerson*, No. 08-35234, 2009 WL 1587160, at *1 (Bankr. N.D. Ohio Apr. 16, 2009) (requiring disgorgement of fees when petition and schedules filed on behalf of the debtor contained discrepancies, omissions, and inaccuracies). The amount of fees to be disgorged usually varies "depending on the seriousness of the omission or error and the efforts made by the attorney to verify the accuracy of the documents." *Ohpark*, 2010 WL 1930187, at *2.

In this case, Davis's actions and omissions do not justify the fees he received. First, the majority of Debtors' unsecured debt was clearly not consumer debt, yet was identified as such in the petition. If this debt had been properly identified from the beginning of the case, it would have been evidence to the UST and the Trustee that the presumption of abuse could not arise in the case, and no investigation would have occurred. *See* 11 U.S.C. § 707(b) ("… the court … may dismiss a case filed by an individual debtor [for abuse]… whose debts *are primarily consumer debts* …") (emphasis added).

Even assuming this classification was justified, Davis failed to properly identify the Debtors' household size, income, and expenses. The error regarding Debtors' household size demonstrates that Davis did not proofread the petition before it was filed. Although a simple error, this error was substantial, as it effected the entirety of the means test analysis. More egregious is Davis's error with Mr. Busche's income. Davis was aware of Mr. Busche's side business, and had access to documents evidencing that Mr. Busche was receiving income in addition to that from his employer up to the date of the filing of the petition. Davis's explanation that he believed Mr. Busche was no longer receiving income from his side business, while credible, is also evidence of Davis's lack of diligence in

7

investigating Debtors' financial affairs. Davis had bank statements showing additional income. He knew Mr. Busche was receiving income from the side business during at least a portion of the pre-petition period that is used to calculate average monthly income. These errors led the UST to spend substantial time and resources investigating the Debtors' affairs. All of these errors could have been avoided had Davis simply asked the right questions and reviewed the documents in his possession.

Although Debtors' ultimately received a discharge, Davis's errors were detrimental to the Debtors and threatened their ability to obtain bankruptcy relief. Failure to disclose assets and cooperate with the Trustee and UST can result in a denial of discharge. *See* 11 U.S.C. § 727(a). Even absent that threat, Debtors were entitled to efficient and proper representation in exchange for the fees they paid. Instead, they attend three meetings of creditors due to no errors of their own; provided Davis and the UST with additional documents that ultimately served no purpose; and participated in numerous meetings with Davis to correct errors he should have been able to avoid by conducting a reasonable, pre-petition inquiry. The evidence presented by the UST, evidence Davis does not dispute, demonstrates that Davis need only have looked at the documents in his possession to discover many of errors. Simply put, Debtors did not receive the representation they - and this Court – expect to be provided. Disgorgement of fees to the Debtors is therefore appropriate.

The UST also requested relief pursuant to § 707(b)(4), which provides for disgorgement of fees to the Trustee. The Court does not disagree that the facts in this case demonstrate that Davis did not properly perform his duty to investigate Debtors' financial

8

affairs. However, based on the facts in this case, the Court finds that disgorgement to the Debtors is more appropriate. A reasonable fee for Davis's services in this case was $500. Davis shall disgorge the remainder to the Debtors.

### III.  CONCLUSION

The proper fee in this case is $500. Davis shall remit the balance remaining in his escrow account, $620, to the Debtors by check no later than 10 days from the entry of this Order. Davis shall provide proof to the United States Trustee of receipt or that the check has been properly deposited by no later than 15 days after the entry of this Order.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**10/27/2015**



Entered: 10/27/2015

David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina